9UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

TERRY R. SNYDER,

                    Plaintiff,                      9:26-CV-0415
                                                    (MAD/ML)
          v.

ST. LAWRENCE COUNTY, et al.,

                    Defendants.

---

APPEARANCES:

TERRY R. SNYDER
Plaintiff, pro se
24-B-4349
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

MAE A. D'AGOSTINO
United States District Judge

## DECISION AND ORDER

## I.   INTRODUCTION

On March 17, 2026, pro se plaintiff Terry R. Snyder ("plaintiff") commenced this action

by submitting a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and Section 504 of the Rehabilitation Act

("RA"), with an application to proceed in forma pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt.

No. 2 ("IFP Application").  The complaint asserted claims related to plaintiff's confinement in

the St. Lawrence County Jail ("St. Lawrence C.J.").  *See generally* Compl.

By Decision and Order filed on June 11, 2026 (the "June 2026 Order"), this Court

granted plaintiff's IFP Application and reviewed the sufficiency of the complaint in accordance

with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  Dkt. No. 8.  On the basis of that review, the Court dismissed plaintiff's complaint for failure to state a claim.  *Id.*  In light of plaintiff's pro se status, the Court provided plaintiff with an opportunity to amend his complaint.  *Id*.

On July 7, 2026, plaintiff filed an amended complaint.  Dkt. No. 10 ("Am. Compl.").

## II.    SUFFICIENCY OF AMENDED COMPLAINT

### A.  Legal Standard

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A was discussed at length in the June 2026 Order and will not be restated in this Decision and Order.  *See* Dkt. No. 8 at 2-4.

### B.  Summary of Amended Complaint[1]

With the amended complaint, plaintiff identifies Nurse Anita Scott ("Scott") as a new defendant.[2]  *See generally* Am. Compl.  The amended complaint does not include any claims against Sheriff Rick Engle ("Engle"), Nurse Practitioner Kenneth Hilborne ("Hilborne"), Corporal Travis Cole ("Cole"), or Sergeant Rodney Votra ("Votra"), who were named as defendants in the original complaint.[3]  *See id.*  The following facts are set forth as alleged by plaintiff in his amended complaint.

On August 8, 2023, plaintiff was committed to the St. Lawrence C.J.  Am. Compl. at 4. During intake, plaintiff denied having any issues with drugs or participating in the Medication-

---

[1]  The amended complaint includes exhibits.  *See* Dkt. No. 10-1.  To the extent that the exhibits are relevant to the incidents described in the amended complaint, the Court will consider the exhibits.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

[2]  The Clerk of the Court is directed to amend the Docket Report to include this defendant.

[3]  The Clerk of the Court is directed to amend the Docket Report to terminate these defendants.

Assisted Treatment ("MAT") Program.  *Id*.; Dkt. No. 10-1 at 39.  Once in his housing unit, plaintiff "smuggled" Suboxone and consumed at least ½ to ¾ of a pill, daily.  Am. Compl. at 4. Plaintiff became addicted to the medication.  *Id*.

On December 18, 2023, plaintiff began to experience symptoms including depression, anxiety, and insomnia.  Am. Compl. at 4.  In late December 2023, plaintiff met with a mental health counselor who told him that she would speak with defendants Jail Administrator Peggy Harper ("Harper") and Corporal Brandy LaRock ("LaRock") regarding plaintiff's possible participation in the MAT program.  *Id*. at 5.  Plaintiff provided a urine sample and tested positive for an ingredient of Suboxone.  *Id.*

On January 2, 2024, plaintiff submitted a request for a follow up with the counselor. Am. Compl. at 5.  The counselor advised that Harper and LaRock denied plaintiff's request because he "did not enter the facility with the issue, so they were not going to treat [him]." *Id*.

On February 1, 2024, plaintiff met with defendants Mental Health Counselor Dianne Touron ("Touron "), Corporal Brandy LaRock ("LaRock"), and Scott.  Am. Compl. at 6-7; Dkt. No. 10-1 at 12-14.  Plaintiff admitted he was using Suboxone and described his symptoms. *Id*.  Plaintiff was asked to provide a urine sample and tested positive for amphetamine, methamphetamine, and MDMA.  *Id*.   Touron asked plaintiff why "MDMA was in [his] system" and he stated he consumed it "on Monday."  *Id*.  Touron told him that the facility physician "was contacted," but plaintiff had to "wait until [his] urine was clean."  Am. Compl. at 6; Dkt. No. 10-1 at 12-13.  Touron also advised that plaintiff's insomnia and psychological distress were the result of using MDMA.  *Id*.  Touron noted that plaintiff was previously prescribed mental health medications including Abilify and Vistaril and warned plaintiff of the dangers of

3

using illicit substances with his prescribed psychotropic medication. *Id*. Plaintiff was placed in "medical[] ad segued for safety and security reasons." *Id.*

On February 2, 2024, Touron re-evaluated plaintiff. Am. Compl. at 8; Dkt. No. 10-1 at 40. At plaintiff's request, Touron released him from "ad segue." Dkt. No. 10-1 at 20.

On February 8, 2024, LaRock directed plaintiff to provide a urine sample. Am. Compl. at 9. The sample was positive for Suboxone. *Id*.; Dkt. No. 10-1 at 28.

In February 2025, plaintiff filed two grievances claiming he developed an addiction while confined at the facility and was being denied medical care. Am. Compl. at 8-9; Dkt. No. 10-1 at 22-23, 32-33. On February 9, 2024 and February 14, 2024, LaRock denied plaintiff's grievances. Am. Compl. at 9. LaRock noted, "[f]acility records show that you have seen the appropriate providers regarding your mental health and that you reported to them that you were not in need of their treatment. Dkt. No. 10-1 at 35.

On February 16, 2024, plaintiff "ran out of Suboxone and could no longer obtain it." Plaintiff's mental health "declined" and, as a result, he took "ten showers" and would hit the walls and scream "out of pain and frustration." Am. Compl. at 9. Plaintiff continued to submit mental health requests, "but nothing was being done." *Id*. at 10. In March 2024, plaintiff was released from the St. Lawrence C.J. *Id.*

Construing the amended complaint liberally[4], plaintiff alleges the following: (1) Fourteenth Amendment equal protection claims; (2) Fourteenth Amendment deliberate

---

[4] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

4

medical indifference claims; (3) ADA and RA claims; and (4) *Monell* claims against St. Lawrence County.  *See generally* Am. Compl.  Plaintiff seeks monetary damages.  *Id*. at 21.

### C.  Analysis

#### 1.  Fourteenth Amendment – Equal Protection Claims

The law related to Fourteenth Amendment equal protection claims was discussed in the June 2026 Order and will not be restated herein.  *See* Dkt. No. 8 at 16.  In the June 2026 Order, the Court dismissed the claims noting that while plaintiff compared himself to "similarly situated incarcerated individuals," "this broad comparison category does not plausibly suggest the level of specificity required by a class of one claim as it does not permit an inference that the members of this class are 'so similar [to plaintiff] that no rational person could see them as different.' "  *Id*. at 17.

With the amended pleading, plaintiff claims that defendants intentionally denied him medical care "while providing treatment to other similarly situated individuals with the same condition."  Am. Compl. at 11.  While plaintiff was afforded the opportunity to amend his complaint, the allegations in the amended pleading do not remedy the deficiencies addressed in the June 2026 Order.  The amended pleading contains only "conclusory allegations of disparate treatment" and lacks any facts suggesting that other inmates or detainees, similarly situated to him in relevant respects, were accepted to the MAT Program.  *See Bills v. Bristoll*, No. 25-CV-13446, 2026 WL 1552231, at *2 (E.D. Mich. June 2, 2026); *see also Hall v. Griffin*, No. 1:25-CV-00438, 2026 WL 63686, at *4 (W.D.N.C. Jan. 8, 2026) (holding that the allegation that "other similarly situated detainees" were offered MAT therapy failed to demonstrate that the plaintiff was being treated differently).

Accordingly, for the reasons set forth herein and in the June 2026 Order, plaintiff's equal protection claims are dismissed.

## 2. Deliberate Medical Indifference

The law related to Fourteenth Amendment deliberate medical indifference claims was discussed in the June 2026 Order and will not be restated herein. *See* Dkt. No. 8 at 19-13.

In the June 2026 Order, the Court dismissed plaintiff's claims reasoning that, as a prisoner, plaintiff is "not entitled to the treatment of his choice" and that his allegations suggested "nothing more than a dissatisfaction with a course of treatment," which did not state a colorable § 1983 claim. Dkt. No. 8 at 12-13. The Court concluded:

> While plaintiff claims he developed an addiction after consuming illegal/illicit medication, the facts do not suggest that any defendant acted intentionally or recklessly in treating plaintiff's addiction. According to the exhibits, plaintiff was provided with mental health treatment. Indeed, plaintiff attended appointments with mental health providers and was prescribed "several mental health medications" including Abilify and Vistaril. Dkt. No. 1-3 at 56-57, 59; *see also Nixon v. United States*, No. 3:25-CV-00488, 2025 WL 1019073, at *4 (M.D. Pa. Apr. 4, 2025) (noting that while the plaintiff may have benefitted from earlier admission to the MAT program, the exhibits attached to the complaint demonstrate that the plaintiff was offered and received other treatment for his various symptoms). Likewise, plaintiff received two separate responses to his grievances which indicated that "[t]he appropriate medical staff has determined that you do not have a problematic pattern of opioid use leading to clinically significant impairment or distress. Inmates do not see the MAT provider by demanding it." Dkt. No. 1-3 at 35-36.

Dkt. No. 8 at 12.

The Court has reviewed the amended complaint and finds that plaintiff has failed to remedy the pleading deficiencies identified in the June 2026 Order. With the amended complaint, plaintiff provided new facts relating to Scott; specifically, his one encounter with her in February 2024 wherein she noted that his vital signs were normal and his urine test

6

showed "AMP500, MET500, and MDMA in his system." Dkt. No. 10-1 at 14. Nothing in the amended pleading suggests that Scott knew of and disregarded an excessive risk to plaintiff's safety or acted recklessly in response to his medical needs.

With the amended complaint, plaintiff also claims that he submitted requests for medical treatment from February 2024 until March 2024 "for days," that were unanswered. *See* Am. Compl. at 9. However, the amended complaint lacks information related to when those requests were submitted, to whom they were submitted, and what response, if any, he received. Indeed, there are no facts connecting any named defendant to those requests. Plaintiff claims that during this time, he would "take upwards of ten showers," and "hit the walls, bed, and screamed out of pain and frustration." *See id.* Plaintiff does not, however, allege that any defendant witnessed or was otherwise aware of these incidents.

Simply put, there are no facts that would allow this Court to infer that any named defendant was deliberately indifferent to plaintiff's serious medical needs. Thus, for the reasons set forth herein and in the June 2026 Order, this claim is dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).[5]

### 3. ADA and RA Claims

The law related to ADA and RA claims was discussed in the June 2026 Order and will not be restated herein. *See* Dkt. No. 8 at 19-22. As noted in the June 2026 Order, the ADA and RA claims asserted against named defendants in their individual capacities were dismissed with prejudice. Dkt. No. 8 at 20. With respect to the claims asserted against individuals in their official capacity, the Court held:

---

[5] The Court further notes that the amended complaint lacks facts suggesting that Harper was personally involved in any alleged constitutional violation. Plaintiff does not allege that he spoke with, wrote to, or otherwise interacted with Harper. The pleading is also devoid of facts that would allow the Court to infer that defendant was personally involved in plaintiff's medical treatment.

Here, the complaint fails to identify any DOCCS' service, program, or activity that plaintiff was unable to participate in because of his medical condition, or a failure to accommodate it, let alone that any such deprivation was based on an official's discriminatory animus or ill will. *See, e.g., Hall v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 12-CV-0377, 2015 WL 901010, at *3-6 (N.D.N.Y. Mar. 3, 2015) (dismissing ADA claims alleging disparate treatment and failure to reasonably accommodate the plaintiff's mental illness, where the plaintiff's denial of access to programs and services was based largely on his conviction of disciplinary offenses, and the complaint largely complained of the adequacy of his mental health treatment rather than discrimination); *Lopez v. Woodson*, No. 23-CV-02689, 2024 WL 7005928, at *9 (D. Colo. Nov. 26, 2024) (holding that the plaintiff was not denied buprenorphine because of his OUD and noting that the treatments are not available to all prisoners, but are only available to prisoners who meet certain qualifications), *report and recommendation adopted*, 2024 WL 7005927 (D. Colo. Dec. 11, 2024), *and report and recommendation adopted*, 2025 WL 4356657 (D. Colo. Aug. 6, 2025); *Chambers v. Wright*, No. 05-CV-9915, 2007 WL 4462181, at *4 (S.D.N.Y. Dec. 19, 2007) (dismissing ADA claims where the "[p]laintiff d[id] not make any allegations concerning [the] [d]efendants' discriminatory animus or ill will"); *Sheeler v. Cherry*, No. 3:24-CV-00326, 2025 WL 824060, at *5 (M.D. Pa. Mar. 13, 2025) (dismissing ADA claim on the denial of placement in the MAT Program because decisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA); *Witham v. Piggott*, No. 1:24-CV-537, 2024 WL 4273576, at *5 (W.D. Mich. Sept. 24, 2024) ("Plaintiff alleges no facts to support an inference that they excluded him because of his drug addiction. Indeed, it would be absurd to exclude prisoners from a drug addiction treatment program because of a drug addiction.").

Dkt. No. 8 at 21-22.

The amended complaint lacks any new facts that remedy the deficiencies in the ADA/RA claims that were addressed in the June 2026 Order. As noted in the June 2026 Order, "[i]n order to establish a prima facie violation under these acts, [an inmate] must show that 1) he is a qualified individual with a disability; 2) [the agency] is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [the agency's]

8

services, programs, or activities or . . . otherwise discriminated against . . . by reason of his disability." Dkt. No. 8 at 19-20. With the amended pleading, plaintiff argues that he is a qualified individual with a disability and that St. Lawrence C.J. is an entity subject to the ADA/RA. *See* Am. Compl. at 14-15. However, with respect to the third prong of an ADA/RA claim, plaintiff states only in a conclusory manner, and without factual support, that defendants "discriminated against him" because his requests were ignored and he was "prevented from seeing the MAT provider." *See id.* at 16. These allegations, without more, do not suggest a colorable ADA/RA claim. The amended complaint is devoid of any facts related to how or why defendants discriminated against him or that this discrimination was the reason for his exclusion from the MAT program. *See Sheeler v. Cherry*, No. 3:24-CV-00326, 2025 WL 824060, at *5 (M.D. Pa. Mar. 13, 2025) (dismissing ADA claim related to denied access to the MAT Program).

In support of his ADA/RA claim, plaintiff cites to Correction Law § 626(4), which governs the MAT Program.[6] *See* Am. Compl. at 15. To the extent that plaintiff claims that defendants violated this statute, the Court declines to exercise supplemental jurisdiction over this claim. District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of

---

[6] Corr. Law § 626(4) provides:

Participation in the medication assisted treatment program shall not be withheld from a qualified incarcerated individual. An incarcerated individual may enter into such program at any time during his or her incarceration. An incarcerated individual using medication assisted treatment prior to such incarcerated individual's incarceration shall be eligible to, upon request by such incarcerated individual, continue such treatment in the medication assisted treatment program for any period of time during the duration of such incarcerated individual's incarceration. No person shall be denied participation in the program on the basis of a positive drug screening upon entering custody or upon intake into the program; nor shall any person receive a disciplinary infraction for such positive drug screening. No person shall be removed from, or denied participation in the program on the basis of having received any disciplinary infraction: (a) before entry into the program; or (b) during participation in the program.

the same case or controversy under Article III of the Constitution.  28 U.S.C. § 1367(a) (2000).  The alleged violations of Corr. Law § 626(4) are parallel to plaintiff's federal claims for deliberate indifference and ADA/RA claims.  Because plaintiff's claims are being dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee*, 316 F.3d 299, 306 (2d Cir. 2003).

### 4.  Claims Against St. Lawrence County

The law related to *Monell* claims was discussed in the June 2026 Order and will not be restated herein.  *See* Dkt. No. 8 at 17-19.  In the June 2026 Order, the Court dismissed these claims noting that, "in the absence of an underlying constitutional violation, there can be no claim for municipal liability."  *Id*. at 18.

As noted *supra*, plaintiff's Fourteenth Amendment claims are not sufficiently plead and have been dismissed.  Thus, for the reasons set forth in the June 2026 Order, plaintiff's *Monell* claims against St. Lawrence County are dismissed.

In this instance, plaintiff has already been provided one opportunity to amend his complaint.  The deficiencies with his original complaint, identified by the court in the June 2026 Order, have not been cured with the amended complaint.  Accordingly, the Court finds that any further amendment would be futile.

## III.   CONCLUSION

**WHEREFORE, it is hereby**

**ORDERED** that the amended complaint (Dkt. No. 10) is **ACCEPTED** for filing and is the operative pleading in this action; and it is further

**ORDERED** that the Clerk of the Court shall amend the Docket Report consistent with this Decision and Order; and it is further

**ORDERED** that the amended complaint (Dkt. No. 10) is **DISMISSED** in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that the Clerk shall enter judgment accordingly; and it is further

**ORDERED** that the Clerk is directed to serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

Dated:  August 7, 2026
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

11